## L. C. HEYDRICK, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4120, 5503.   Promulgated August 1, 1927.

1. Where petitioner delivered a deed to a farm in the payment of commissions, the transfer not being acceptable to nor accepted by the transferee as payment, deductions claimed for a loss upon the realty transferred and for the commissions paid, denied.

2. A loss sustained on the sale of an oil lease, allowed.

3. The inclusion of profits derived from the sale of an interest in a railroad, approved.

*Robert Ash, Esq.*, and *Thos. J. Reilly, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, for the respondent.

These proceedings result from the determination by respondent of deficiencies in income tax for the calendar years 1919 and 1920, in the amounts of $186,038 and $13,239.14, respectively. The proceedings for both years were consolidated for hearing and decision. Approximately one hundred adjustments to income are in controversy. The parties filed a stipulation on January 26, 1927, agreeing to the facts and the corresponding adjustment to income on all save four errors assigned. Only the issues now in controversy will be considered and the stipulation will be followed by the parties in the redetermination of the deficiency under Rule 50. The four issues submitted for our determination are: (1) The petitioner avers that the respondent erred in his failure to allow as a deduction from income in 1919, a loss of $22,678, sustained on the sale of the Honaker Farm; (2) the petitioner avers that the respondent erred in his failure to allow as a deduction for 1919 the sum of $12,818 paid as commissions; (3) the petitioner avers that the respondent erred in his failure to allow in 1920 a loss sustained on the sale of the Pearson Lease, in the sum of $2,431.01; (4) petitioner avers that the respondent erred in his inclusion in income for the year 1920 of a profit of $12,130.44 from the sale to Jake L. Hamon of petitioner's share in a railroad.

### FINDINGS OF FACT.

Petitioner is an individual residing at Wichita Falls, Tex., and during the years 1919 and 1920, was engaged in the oil and sundry other businesses. In the year 1919 and prior thereto, he had purchased many oil leases in the vicinity of Eastland, Tex., and had employed as his agents in the purchase of same, two lawyers, father and son, J. R. Frost and Cyrus Frost, respectively. He had no written contract with his agents concerning the compensation to be

received for services, but there existed an oral understanding that when the leases were sold, the agents would receive a percentage of the profits in payment for their services.

In the latter part of November or first part of December, 1919, the son went to Wichita Falls to secure a settlement from petitioner for services rendered to date. He was advised by petitioner that the latter had no funds with which he could make payment, but petitioner offered to deed to him property known as the Honaker Farm, in satisfaction of services rendered to date. Petitioner had purchased the Honaker Farm at a cost of $35,496 and believed its value when offered to his agent to be $12,818. Cyrus Frost, after investigating the value of the Honaker Farm, advised petitioner that he refused to accept the same in payment for his services. Subsequent to the conversation between petitioner and Cyrus Frost, the former caused a deed to be executed to the Honaker Farm, naming Cyrus Frost as grantee. The deed was recorded by petitioner in Wichita County, Tex., on January 5, 1920, and after being recorded, was returned to petitioner and mailed to J. R. Frost. The latter died in 1922, and the deed to the Honaker Farm was found among his papers by his son, Cyrus Frost. The deed to the Honaker Farm bore date of December 31, 1919.

Cyrus Frost did not know petitioner had deeded him the Honaker Farm until some time in the year 1920, and did not get actual possession of the deed until after his father's death. He has never taken possession of the property, has never collected or received any rents or revenue from it, and has not paid taxes thereon. Petitioner has received the rents and revenues and has paid the taxes that have been paid on the property.

In 1920, petitioner was a member of the partnership of Heydrick & Shaw. The partnership maintained no books of account, its records consisting of canceled checks, copies of deposit slips, correspondence, and originals of leases and notes. From these sources, a public accountant obtained the information used by him in March, 1921, in opening a set of books for the year 1920.

An oil and gas lease, known as the Pearson Lease, was acquired by the partnership in 1920, for a consideration of $10,000 cash and three promissory notes of $3,333.33 each, due November 1, 1920, January 1, 1921, and March 1, 1921, respectively. Oil was discovered on the Pearson Lease but in the fall of 1920, the wells became nonproducing. Subsequently, but in the year 1920, George L. Dobie, an employee of the partnership and petitioner, gave to the partnership his promissory note for $1,000, payable on demand, for the Pearson Lease, and same was assigned to him by the partnership. In June, 1921, the Pearson Lease was sold to the Pan Handle Refining Co. for $1,000.

The proceeds were paid, $500 to Sherwood and Spalding for their one-half interest, which they had acquired from Dobie, and the remainder, $500, was paid to Dobie. Dobie, upon receipt of the check for $500, endorsed the same over to the partnership in part payment on his note of $1,000. The balance of $500 remaining due on the Dobie note, was never paid and the partnership charged the same to profit and loss on the partnership books at the end of 1921.

Prior to 1919, the Wichita Falls & Southern Ry. had built a road from Wichita Falls to Newcastle, Tex. Several individuals conceived the idea of extending the railroad from Newcastle to Dublin, Tex., thus providing that territory with a connection from Wichita Falls to Dublin, Tex., and with the Frisco lines at the latter place. Two partnerships were to be organized to carry the construction of the road into effect. Frank Kell and his associates, including the petitioner, agreed to bear one-half of the cost of construction of the line and one Jake Hamon and his associates agreed to bear one-half of the cost of construction. The interests in the partnership headed by Kell were to be represented by twenty-four units or shares, and petitioner was the owner of one unit or a one twenty-fourth interest. By 1920, the construction of the road starting at Dublin, had progressed nearly to Jim Kurn, Tex., and, therefore, past Breckenridge, Tex., when a disagreement arose between the Kell and Hamon interests, with the result that under an agreement dated September 1, 1920, the Kell interests sold to the Hamon interests Liberty bonds of a par value of $150,000 and their 50 per cent interest in the railroad from Dublin to the point then completed, for $1,050,000 in cash, the common stock of the Wichita Falls & Southern Ry. Co., and the assumption by the Hamon interests of all liabilities of whatever nature, in connection with that part of the project then built. It was further agreed that the Kell interests would assume all liability under an agreement under a bond in the amount of $100,000, with the City of Breckenridge, relating to the construction of the road from Breckenridge to Newcastle. It was understood between the parties, that the Kell interests intended to construct a railroad from Breckenridge to Newcastle. Entries on the books of the partnership (Kell interests) are shown as follows, under date of September 1, 1920:

September 1, 1920—
    City National Bank _____ $1,050,000.00
    Jake Hamon—Sale Ranger Ry. interest subscription account _ $1,050,000.00
September 1, 1920—
    For sale by Frank Kell and associates of their
       interests in W. F. R. & F. W. R. R. to Jake
       Hamon as of September 1, 1920, including
       the Liberty Bonds placed with Frisco R. R.
       interests on L. B. to accrue to F. Kell and
       associates to August 31, 1920, incl.

September 1, 1920—Continued.

| | | |
|---|---|---|
| City National Bank | $1,050,000.00 | |
| W. F. R. & F. W. R. R. | | $625,000.00 |
| S. L. and S. F. R. R. | | 150,000.00 |
| Profit and Loss | | 275,000.00 |

A distribution at the rate of $10,000 per unit share was paid in cash to the several parties—amounting to $10,000 to the petitioner, with the oral understanding that the partners would be called upon for contributions, when the railroad construction from Breckenridge to Newcastle required capital.

### OPINION.

MILLIKEN: It is the petitioner's contention, respecting the first and second issues, that he suffered a loss of $22,678, when he is purported to have deeded the Honaker Farm to Cyrus Frost, and that he is entitled to a deduction as commissions paid of $12,818. Petitioner did owe his agents for the services which they had rendered—the exact amount we are not advised, whether more than or less than the sum sought to be deducted. Cyrus Frost testified that he had a conversation with petitioner, in the fall of 1919, with regard to the payment for services, that he was offered a deed to the Honaker Farm, which he refused to accept. During the year 1920, he, for the first time, learned the farm had been deeded to him and for the first time found the deed when going through his father's papers, in 1922. He has received no rents or revenue from the same and has paid no taxes thereon. Petitioner has collected the revenues and rents from the farm and has paid the taxes that have been paid. The record contains no evidence of even presumptive delivery of the deed to the property, earlier than January 5, 1920. After due consideration of all the facts of record, we are of the opinion that the respondent should be sustained on both issues.

Concerning the third issue, we are of the opinion that the partnership of Heydrick & Shaw is entitled to an allowance of the loss claimed on the sale in 1920, of the Pearson Lease to Dobie.

The remaining issue relates to the determination by respondent that the petitioner received income attributable to his share accruing to the partnership of which he was a member, by reason of the sale made to the Hamon interests. The record does not disclose the events which led up to disagreement and the dissolution of the partnership, which existed between the Kell and Hamon interests. We do know that the construction of the railroad was halted, that

the Kell interests sold $150,000 par value of Liberty bonds and relinquished all right and title to the railroad as far as had been constructed, extending from Dublin to a point beyond Breckenridge, and were relieved of all liabilities of whatever nature attaching to the railroad project, and upon settlement in 1920, were possessed of the entire common capital stock of the Wichita Falls & Southern Ry. Co., and the sum of $1,050,000 in cash.

Petitioner contends that he should not be charged with income by reason of the transaction with the Hamon interests, because there still existed a liability to extend the railroad from a point beyond Breckenridge to Newcastle, and that in subsequent years, Kell and associates were sued for some of the debts of the Hamon interests incident to the construction of the railroad from Dublin to Breckenridge.

An entirely changed state of affairs existed after the sale to the Hamon interests. Kell and his associates were engaged in an undertaking of their own, in which they were entirely responsible, i. e., the building of the railroad from Breckenridge to Newcastle. As a partnership, they had sold their right, title and interest in the railroad thus far constructed, and upon receipt by Kell, his associates received income to the extent of their distributable interest therein. It may well be that in the construction of the railroad from Breckenridge to Newcastle, they were called upon for contributions in excess of the sums received from the partnership arising out of the Hamon transaction, but, if so, that was another transaction requiring the investment of capital with which we are not here concerned. Neither should we be concerned with the suits instituted against Kell and his associates, in years subsequent to 1920, by reason of the failure of Hamon to pay all claims which he agreed to pay by the contract of September 1, 1920. In the first place, no losses have in fact been shown to have resulted, by reason of the suits, and in the second place, Kell and his associates believed Hamon to be fully solvent when the sale was made and did not contemplate that any liability would ever result. We are of the opinion that the evidence concerning this issue does not prove the error alleged.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE and PHILLIPS.